IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN ERNEST BRADER SR., #297286 | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. DKC-13-587 |
| JOHN S. WOLFE, WARDEN JCI | * | |
| ALLEN GANG, CHIEF OF SECURITY JCI | | |
| Defendants. | * | |

***

# MEMORANDUM OPINION

## Procedural History

This prisoner civil rights Complaint, filed on February 22, 2013, raised a failure-to-protect claim alleging that while housed at the Jessup Correctional Institution ("JCI") Plaintiff is being targeted by the Black Guerilla Family ("BGF") and Bloods gangs due to an alleged debt. Plaintiff claims that the BGF has discovered where his family lives and has threatened his brother. He complained that he continues to receive notes from BGF members even though he is not in general population. Plaintiff voiced his fear of physical harm and sought a transfer from JCI to a more "structure oriented prison." He alleged that JCI is "total chaos." (ECF No. 1).

On March 7, 2013, Plaintiff filed a Motion for Injunctive Relief. He alleged that although he is housed on administrative segregation/protective custody status, he continues to receive verbal and written threats from the BGF. He additionally claimed that the Special Threat Group ("STG") has acquired the addresses and telephone numbers of family members and have contacted them. Plaintiff seeks immediate transfer to another institution, where "he will not continue to receive threats from members of the [BGF] …" (ECF No. 4).

Defendants were ordered to file a response to the Complaint and Motion for Injunctive Relief and have done so. (ECF No. 13). On May 30, 2013, the Court construed the response as a motion for summary judgment and informed Plaintiff of the re-characterization and his right to file an

opposition response. He was granted an additional seventeen days to do so. (ECF Nos. 14 & 15). On June 7, 2013, he filed an opposition response. (ECF No. 16). The case is ready for court consideration. Oral hearing is unnecessary. *See* Local Rule 105.6 (D. Md.). For reasons that follow, the Motion for Injunctive Relief shall be denied and judgment shall be entered in favor of Defendants.

**Standard of Review**

Under Fed. R. Civ. P. 56(a):

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should

"view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Because summary judgment is a final adjudication on the merits, courts must employ the device cautiously. *See Hulsey v. State of Texas,* 929 F.2d 168, 170 (5th Cir. 1991). In prisoner self-represented cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Jackson v. Cain,* 864 F.2d 1235, 1241 (5th Cir. 1989) ( *quoting Murrell v. Bennett,* 615 F.2d 306, 311 (5th Cir. 1980)).

According to Defendants, Plaintiff was assigned to administrative segregation on February 4, 2012, while incarcerated at the Eastern Correctional Institution due to his claims that he had been threatened by members of the BGF. (ECF No. 13 at Ex. 1, Karanja Decl. and pgs. 4-6). He informed prison personnel that the BGF members were attempting to collect a debt and he feared for his safety. (*Id*.). An investigation was conducted into Plaintiff's claim. Three days later he was removed from segregation and placed back in general population. Intelligence officers had concluded that he was not under a threat from any STG and did not have any known enemies. (*Id*.).

On May 15, 2012, Plaintiff was placed in isolation pending investigation into his claims that he had again been threatened by members of the BGF regarding a debt and that he feared for his safety. (*Id*. at Ex. 1, pgs. 7-9). The following day he was placed on a transfer list to be reassigned to

any medium security prison, with a note that he was not currently under a threat from any STG and did not have any known enemies. (ECF No. 13 at Ex. 1, pgs. 10-14).

On September 14, 2012, Plaintiff was transferred to JCI. Two months later, on November 30, 2012, he was assigned to administrative segregation based on his claim that he was having problems with the BGF while housed at ECI and had received death notes from other inmates since his arrival at JCI. (Id. at Ex. 1, pgs. 15-17). Lieutenant Brandon Barnett was assigned to investigate Plaintiff's claims and concluded that Plaintiff should remain on segregation pending his transfer. On December 4, 2012, Plaintiff's case manager, Kamau Karanja, obtained Barnett's recommendation and concurred with the Lieutenant's assessment. The case management review team in turn concurred with Karana's recommendation, as did the Warden, who approved the recommendation on December 12, 2012. (*Id.* at Ex. 1, p. 18).

From December of 2012, through April of 2013, Plaintiff's segregation assignment was reviewed by case management personnel and decisions were made to continue his assignment to administrative segregation pending transfer based upon Barnett's investigation. (*Id.* at Ex. 1, pgs. 19-29). Defendants indicate that Plaintiff remains assigned to segregation and is on the list to be transferred to the Maryland Correctional Institution in Hagerstown ("MCIH"), which has a protective custody unit. They claim that there are currently no beds available in the MCIH protective custody unit, and Plaintiff will be transferred there as soon as a bed becomes available. (*Id.* at Ex, 1, p. 30).

In his Opposition response, Plaintiff claims he has proof that he has received written threats while being housed on JCI administrative segregation. (ECF No. 16). He contends that his claims of imminent harm from the BGF are borne out by the documentation presented by Defendants to transfer him to MCIH protective custody due to threats from a STG. (*Id.*).

4

Deliberate indifference in the context of a prisoner failure-to-protect claim requires that a defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302-303 (4th Cir. 2004); *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). Under Fourth Circuit law, liability under the *Farmer* standard requires two showings. First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers *should have* recognized it; they actually must have perceived the risk. *See Rich v. Bruce,* 129 F.3d 336, 340 n. 2 (4th Cir.1997). Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." *Id*. As with the subjective awareness element, it is not enough that the official *should have* recognized that his actions were inappropriate; the official actually *must have* recognized that his actions were insufficient. *See Brown v. Harris,* 240 F.3d 383, 390-91 (4th Cir. 2001).

Plaintiff solely seeks injunctive relief in the form of a transfer to a more structurally sound prison. An injunction is a drastic remedy which should not be granted as a matter of course. *See Monsanto Co. v. Geertson Seed Farms*, 130 S.Ct. 2743, 2761 (2010). The party seeking the injunction must demonstrate: (1) by a "clear showing" that, he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Real Truth About Obama, Inc. v. Federal Election Com'n,* 575 F. 3d 342, 346-47 (4th Cir. 2009), vacated on other grounds, __U.S. __, 130 S.Ct. 2371, 176 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per

curiam). All four requirements must be satisfied. *Id.* Indeed, the Court in *Winter* rejected a standard that allowed the [movant] to demonstrate only a "possibility" of irreparable harm because that standard was "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may ... be awarded [only] upon a clear showing that the [movant] is entitled to such relief." *See Winter*, 555 F.3d at 22.

Plaintiff has been called upon to rebut Defendants' Declarations and materials with his own verified documents to establish a genuine dispute of material fact with regard to his personal safety claims and his imminent harm. He has failed to so do. The claims raised in his Complaint were made to ECI and JCI staff. They did not consciously ignore his complaints; rather, each time he claimed he had been threatened they investigated his allegations and took action to allay any potential risk of harm. Plaintiff is currently being held on administrative segregation at JCI,[1] pending transfer to MCIH's protective custody unit. Defendants affirm that while housed on administrative segregation all reasonable steps will be taken to ensure his safety.

For the aforementioned reasons, Defendants' court-construed motion for summary judgment shall be granted. Injunctive relief shall be denied. A separate Order follows in compliance with the Memorandum Opinion.

Date: July 3, 2013           /s/
          DEBORAH K. CHASANOW
          United States District Judge

---

[1] Defendants affirm that administrative segregation is a special housing status for inmates who require close supervision or segregation from general population. (ECF No. 13, Ex. 1 at Karanja Decl.).